UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| INTERSPORT, INC.; DOUBLE EAGLE CLUB, INC., ) ) ) Plaintiffs, ) ) vs. ) ) T-TOWN TICKETS LLC, ) ) Defendant. ) | Case No. 7:11-cv-04069-SLB |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Amended Motion to Dismiss, (doc. 6),[1] and plaintiffs' Motion to Strike, (doc. 13). Defendant moves for dismissal of this action, in its entirety, for: (1) lack of subject matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) failure to state a claim upon which relief can be granted; and (5) failure to join an indispensable party. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Amended Motion to Dismiss, (doc. 6), is due to be denied and plaintiffs' Motion to Strike, (doc. 13), is moot.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

## I.  STATEMENT OF FACTS

Plaintiffs Intersport Inc., ("Intersport"), an Illinois corporation, and Double Eagle Club, Inc., ("Double Eagle"), a Georgia corporation, (collectively, the "plaintiffs") are sports and entertainment marketing companies who purchase tickets to various sporting events as a part of each company's business.  (Doc. 1 ¶¶ 1-2, 6.)  Defendant T-Town Tickets ("defendant") is an Alabama limited liability company engaged in the business of selling tickets to sporting events.  (*Id*. ¶¶ 3, 7.)  The parties have had previous business dealings together, including the purchase and sale of tickets to the NCAA Men's Basketball Tournament, the NCAA Women's Basketball Tournament, the Masters Golf Tournament, and the United States Open Championship, among others.  (*Id*. ¶ 8.)  Plaintiffs generally conducted business with defendant through defendant's authorized representative Raymond "Lucky" Wells ("Wells"). (*Id*.)

On or about April 17, 2011, Intersport ordered and purchased from defendant three tickets to the 2011 Rugby World Cup ("Rugby Tickets").  (*Id*. ¶ 9.)  Intersport wrote defendant a check for $10,000.00 in exchange for the Rugby Tickets. (*Id*. ¶¶ 9, 11.)  In May 2011, Double Eagle ordered and purchased from defendant forty badges to the 2012 Masters Tournament ("Masters Badges").  (*Id*. ¶ 10.)  Double Eagle wrote defendant a check for $80,000.00 in exchange for the Masters Badges.  (*Id*. ¶ 10, 11.)  Defendant deposited plaintiffs' checks but failed to provide either plaintiff with the respective tickets purchased. (*Id*. ¶¶ 12-14.)

On December 1, 2011, plaintiffs filed the instant action against defendant, asserting state law claims for breach of contract, unjust enrichment, and tortious interference with business relations. (*Id*. ¶¶ 16-29.) On January 23, 2012, defendant filed its first Motion to Dismiss, (doc. 5). Four days later, defendant filed an Amended Motion to Dismiss, (doc. 6), with the Affidavit of Candice Carden (doc. 6-1), defendant's president and founder, attached. In her affidavit, Carden declares that Wells, now deceased, was the owner of Events Worldwide, a Florida-based company, and served as an independent broker of defendant's tickets. (Doc. 6-1 at 1.) Carden also declares that defendant has no records evidencing the purchases of the Rugby Tickets or Masters Badges, nor do defendant's accounting records reflect that defendant received or deposited plaintiffs' checks. (*Id*. at 2.) To Carden's knowledge, Wells opened a bank account at Coastal Bank and Trust with documents in his possession from defendant and deposited plaintiffs' checks into that account. (*Id*.) Plaintiffs moved to strike the Affidavit of Candice Carden. (Doc. 13.)

## II.  DISCUSSION

### A.     MOTION TO STRIKE, (doc. 13)

Defendant attaches the Affidavit of Candice Carden, (doc. 6-1), with its Amended Motion to Dismiss for the primary purpose of demonstrating that plaintiffs cannot state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Defendant avers that it cannot be held liable for the misconduct alleged because the Carden affidavit demonstrates that Wells was an independent broker of defendant's tickets, not an employee.

3

(Doc. 12 at 1.) Plaintiffs move to strike the Affidavit of Candice Carden on the ground that the affidavit constitutes an improper submission of extrinsic evidence in support of a motion to dismiss brought under Rule 12(b)(6). (Doc. 13.)

"A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss." *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006). A court may consider extrinsic evidence submitted in conjunction with a Rule 12(b)(6) motion to dismiss as long as the court converts the motion to dismiss into a motion for summary judgment under Fed. R. Civ. P. 56 and provides the parties with adequate notice of its intent to do so. FED. R. CIV. P. 12(d). However, federal courts have complete discretion whether to consider the submissions of materials outside the pleadings accompanying a Rule 12(b)(6) motion, and "[a] judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings. According to case law, 'not considering' such matters is the functional equivalent of 'excluding' them—there is no more formal step required." *Harper v. Lawrence County.*, 592 F.3d 1227, 1232 (11th Cir. 2010); *see also Jones v. Auto. Ins. Co. of Hartford*, 917 F.2d 1528, 1531-32 (11th Cir. 1990) ("It is within the judge's discretion to decide whether to consider matters outside of the pleadings that are presented to the court. However, if the judge does consider these outside matters, i.e., if the judge does not exclude them, Rule 12(b) requires the judge to comply with the requirements of Rule 56." (internal citations omitted)).

Here, the court exercises its discretion in excluding the Affidavit of Candice Carden from consideration and, therefore, declines to convert defendant's Rule 12(b)(6) motion into a motion for summary judgment. Whether defendant engaged in the alleged misconduct (or as defendant has framed the issue, whether Wells was actually an "authorized representative" or independent broker) is an issue more properly adjudicated at a later date after the parties have conducted discovery. Because the court will exclude the Carden affidavit from consideration when ruling on defendant's Rule 12(b)(6) motion, plaintiffs' Motion to Strike is rendered moot.

**B.     AMENDED MOTION TO DISMISS, (doc. 6)**

**1.     Subject Matter Jurisdiction**

Defendant first moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1). (Doc. 6 ¶ 1.) Under Rule 12(b)(1), a party may move the court to dismiss a case if the court lacks jurisdiction over its subject matter. The party invoking jurisdiction bears the burden of establishing the court's subject matter jurisdiction. *See Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

Attacks on subject matter jurisdiction consist of two types: "facial attacks" and "factual attacks." *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citations omitted). "'Facial attacks' on the complaint 'require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of

5

the motion.'" *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953 (1980) (citation omitted)).[2] Motions alleging facial attacks on subject matter jurisdiction therefore afford plaintiffs the same procedural safeguards as those in a 12(b)(6) motion, since the court must consider the allegations in the complaint to be true. "'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca*, 613 F.2d at 511 (citation omitted)); *see also Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (deciding that a factual attack had occurred because the motion to dismiss relied on extrinsic evidence and did not assert a lack of subject matter jurisdiction based solely on the pleadings). Presented with a factual attack, then,

> the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction — its very power to hear the case — there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

---

[2] In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former United States Court of Appeals for the Fifth Circuit announced prior to October 1, 1981.

*Lawrence*, 919 F.2d at 1529 (quoting *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981) (citation omitted)).

Defendant provides no explanation why the court lacks subject matter jurisdiction over this dispute, and the Affidavit of Candice Carden contains no evidence contradicting the Complaint's jurisdictional allegations. Consequently, the court construes defendant's Rule 12(b)(1) argument as a "facial attack" on the court's subject matter jurisdiction, and the court accepts the jurisdictional allegations contained in the Complaint as true.

The Complaint alleges that the court has original subject matter jurisdiction over this dispute under the diversity of citizenship statute, 28 U.S.C. § 1332, and the supplemental jurisdiction statute, 28 U.S.C. § 1367. (Doc. 1 ¶ 4.) Section 1332(a) provides that federal courts have original jurisdiction over all civil actions when complete diversity of citizenship exists between the parties and the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). "Complete diversity" means that the citizenship of every plaintiff must be diverse from the citizenship of every defendant." *Legg v. Wyeth*, 428 F.3d 1317, 1321 n.2 (11th Cir. 2005). Moreover, if a court has original jurisdiction over at least one plaintiff's claim, it may exercise supplemental jurisdiction over other plaintiffs' claims that do not exceed $75,000 pursuant to Section 1367 if those claims "form part of the same case or controversy" as the claim exceeding the jurisdictional threshold. 28 U.S.C. § 1367(a); *see Exxon Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 559 (2005) ("When the well-pleaded complaint contains at least one

claim that satisfies the amount-in-controversy requirement, and there are no other relevant jurisdictional defects, the district court, beyond all question, has original jurisdiction over that claim. The presence of other claims in the complaint, over which the district court may lack original jurisdiction, is of no moment. If the court has original jurisdiction over a single claim in the complaint, it has original jurisdiction over a 'civil action' within the meaning of § 1367(a), even if the civil action over which it has jurisdiction comprises fewer claims than were included in the complaint."). When "each claim involves the same facts, occurrences, witnesses, and evidence . . . [t]his commonality is sufficient to satisfy the constitutional minimum required by section 1367(a)." *Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1566 (11th Cir. 1994)).

Addressing diversity of citizenship, the Complaint alleges that Intersport is an Illinois corporation, Double Eagle is a Georgia corporation, and defendant is an Alabama limited liability company. (Doc. 1 ¶¶ 1-3.) Without any evidence to the contrary, complete diversity of citizenship exists between the parties. Moreover, the amount in controversy requirement is satisfied for both Intersport and Double Eagle. The Complaint's allegations regarding Double Eagle satisfy the amount in controversy requirement because it alleges that Double Eagle suffered damages in excess of $80,000.00. Although the Complaint alleges that Intersport suffered damages of only $10,000.00, the court is satisfied Intersport and Double Eagle's claims "form part of the same case or controversy," and, therefore, the court may exercise supplemental jurisdiction over Intersport's claims pursuant to Section 1367.

Specifically, the court is satisfied that the disposition of Intersport and Double Eagle's claims will involve many of the same witnesses and the operative facts underlying each plaintiff's claims are virtually identical. Accordingly, plaintiffs have sufficiently demonstrated that diversity jurisdiction exists under Section 1332, and defendant's Amended Motion to Dismiss for lack of subject matter jurisdiction is due to be denied.

### 2. Personal Jurisdiction

Defendant also contends that this case is due for dismissal pursuant to Fed. R. Civ. P. 12(b)(2) because defendant, an Alabama limited liability company, is not subject to personal jurisdiction in the Northern District of Alabama. (Doc. 6 ¶ 1.) Defendant supports this argument by referencing an excerpt of 28 U.S.C. § 1391, the statute governing federal venue, which states, in part, that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]" 28 U.S.C. § 1391(b)(2). Defendant argues that the court lacks personal jurisdiction because "[p]laintiffs' assertion that a substantial part of the events took place in this district is a bare allegation . . . . [and] the Complaint is completely devoid of any facts alleging where the alleged events took place." (Doc. 12 ¶ 3.) In this case where the events giving rise to this action occurred is not relevant to the court's personal jurisdiction analysis.

In diversity actions, a federal district court "may exercise jurisdiction over a . . . defendant to the same extent as a court of that state." *Ruiz de Molina v. Merritt & Furman*

*Ins. Agency, Inc.*, 207 F.3d 1351, 1355 (11th Cir. 2000) (citing *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260 (5th Cir. Unit A Aug. 1981)). Alabama Rule of Civil Procedure 4.2(b) effectively serves as Alabama's "long-arm" statute and authorizes personal jurisdiction to the fullest extent permissible under the United States Constitution. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (citing ALA. R. CIV. P. 4.2(b); *Sieber v. Campbell*, 810 So. 2d 641, 644 (Ala. 2001)). As required by the United States Constitution, "[a] court may subject a defendant to judgment only when the defendant has sufficient contacts with the sovereign such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *J. McIntyre Machinery, Ltd. v. Nicastro*, __ U.S. __, 131 S. Ct. 2780, 2787 (2011) (internal quotations and citations omitted). It has been well-established that a forum state constitutionally and permissibly exercises "general" personal jurisdiction over persons or entities whom are citizens or residents of the forum state, regardless of whether the suit arises out of the citizens' or residents' contacts with the forum state. *See Pennoyer v. Neff*, 95 U.S. 714 (1877) (providing that one means of establishing personal jurisdiction is to demonstrate that the defendant is a "resident" of the forum state) *overruled on other grounds by Shaffer v. Heitner*, 433 U.S. 186 (1977); *see also J. McIntyre Machinery*, 131 S. Ct. at 2787 (citations omitted).

Here, defendant, **as an Alabama citizen**, is undoubtedly subject to "general" personal jurisdiction under Alabama's "long-arm" statute, Ala. R. Civ. P. 4.2(b). Therefore, defendant

is subject to personal jurisdiction in the Northern District of Alabama, and defendant's Amended Motion to Dismiss for lack of personal jurisdiction is due to be denied.

### 3. Venue

Defendant also moves for dismissal under Fed. R. Civ. P. 12(b)(3), arguing that venue is improper. In support, defendant selectively quotes 28 U.S.C. § 1391 for the proposition that venue is only proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Defendant omits the provision of 28 U.S.C. § 1391(b) which provides that a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Under this provision, the Northern District of Alabama is a proper venue because defendant, the only defendant to this action, "resides" within this district. (Doc. 1 ¶ 5.) Therefore, defendant's Amended Motion to Dismiss for improper venue is due to be denied.

### 4. Failure to State a Claim

Defendant asserts that this matter is due to be dismissed pursuant to Rule 12(b)(6) because the Complaint fails to state a claim upon which relief can granted. In response, plaintiffs simply state that the factual allegations contained in the Complaint sufficiently support the claims for which they seek relief. (Doc. 8 at 5.) In reply, defendant contends that plaintiffs' response is insufficient to overcome dismissal in this matter based upon the

declarations made in the Affidavit of Candice Carden.  (Doc. 12 at 5.)  As discussed *supra*, the court will exclude the Affidavit of Candice Carden from consideration at this stage. Thus, the only remaining question is whether the Complaint pleads factual allegations sufficient to overcome defendant's Rule 12(b)(6) motion.

To survive a Rule 12(b)(6) motion to dismiss, "the complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ironworkers Local Union 68 v. AstraZeneca Pharmaceuticals*, LP, 634 F.3d 1352, 1359 (11th Cir. 2011) (internal quotations and citations omitted).  A claim is "plausible" if the facts are sufficient "to allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (citations, alterations, and internal quotation marks omitted).  "[W]hile notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'"  *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).

### a.     Breach of Contract (Count One)

To sustain a breach of contract claim under Alabama law, a plaintiff must demonstrate: "(1) the existence of a valid contract binding the parties in the action, (2) [his] own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Ex parte Am. Heritage Life Ins. Co.*, 46 So. 3d 474, 477 (Ala. 2010) (quoting *Congress Life Ins. Co. v. Barstow*, 799 So.2d 931, 937 (Ala. 2001)) (quotations omitted).  The Complaint alleges, and the court accepts as true, that defendant entered into valid and binding contracts with Intersport and Double Eagle under which "[d]efendant agreed to provide forty (40) Masters 4 Day Badges for the 2012 Masters Golf Tournament and three (3) 2011 Rugby World Cup tickets." (Doc. 1 ¶ 17.)  The Complaint further alleges that both plaintiffs performed their obligations under the contracts, that defendant failed to provide either plaintiff with their purchased tickets, and that plaintiffs have incurred and continue to incur damages as a result of defendant's nonperformance. (*Id*. ¶¶ 18-20.)  Accordingly, plaintiffs have adequately set forth an actionable breach of contract claim and defendant's Amended Motion to Dismiss plaintiffs' breach of contract claim is due to be denied.

### b.     Unjust Enrichment (Count Two)

In Alabama, "the essence of . . . unjust enrichment . . . is that a plaintiff can prove facts showing that defendant holds money which, in equity and good conscience, belongs to plaintiff or holds money which was improperly paid to defendant because of mistake or

fraud." *Hancock–Hazlett General Const. Co., Inc. v. Trane Co.*, 499 So.2d 1385, 1387 (Ala. 1986) (emphasis original).  Thus, "to prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Matador Holdings, Inc. v. HoPo Realty Investments, L.L.C.*, 77 So. 3d 139, 145 (Ala. 2011) (quoting *American Family Care, Inc. v. Fox*, 642 So.2d 486, 488 (Ala. Civ. App. 1994)) (quotations omitted).  The Complaint, as a whole, alleges the requisite elements of an unjust enrichment claim as follows: defendant received and deposited checks from Intersport and Double Eagle and continues to retain the funds, (doc. 1 ¶¶ 11, 14, 22); plaintiffs made said payments with the reasonable expectation that defendant would provide them with the Rugby Tickets and Masters Badges, (*id.* ¶¶ 9-10, 14); the money received by defendant should be returned to plaintiffs in equity and good conscience, (*id.* ¶ 22).  Such allegations adequately plead a viable unjust enrichment claim, and defendant's Amended Motion to Dismiss plaintiffs' unjust enrichment claim is due to be denied.

    **c. Interference with Business Relations (Count Three)**

  Under Alabama law, a plaintiff establishes a *prima facie* case of tortious interference with business relations by demonstrating the following elements: "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Group, L.L.C. v. PRS II, L.L.C.*, 32 So.3d 5, 14 (Ala. 2009).  The

Complaint alleges that plaintiffs maintain business relationships with customers to whom they procure and provide tickets, and defendant is cognizant of these business relationships. (Doc. 1 ¶¶ 25-26.) The Complaint further alleges that defendant intentionally interfered with plaintiffs' business relationships "by falsely representing that it could and would procure forty (40) Masters Badges for the 2012 Masters and three (3) tickets for the 2011 Rugby World Cup and subsequently refusing to provide those tickets." (*Id*. ¶ 27.) Finally, the Complaint alleges that plaintiffs have incurred damages as the proximate consequence of defendant's intentional interference. (*Id*. ¶ 29.) These allegations sufficiently set forth an actionable tortious interference with business relations claim and defendant's Amended Motion to Dismiss is due to be denied.

### 5. Failure to Join an Indispensable Party

Defendant moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(7) based upon plaintiffs' purported failure to join an indispensable party. Specifically, defendant contends that the Wells Estate constitutes an indispensable party to this action as defined by Fed. R. Civ. P. 19 because Wells, now deceased, is the individual who sold plaintiffs the Masters Badges and Rugby Tickets.

Rule 12(b)(7) provides that courts *may* dismiss suits where plaintiffs fail to join indispensable parties. To determine whether dismissal is appropriate based on a plaintiff's failure to join an indispensable party, courts must apply the criteria set forth in Rule 19 . *See Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982).

Before the court examines whether an absent party is an indispensable party, the court must determine whether the absent party constitutes a "necessary" party under Rule 19(a)(1). Rule 19(a)(1) set forth two categories of "necessary" parties who must be joined if feasible:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> >
> > (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> >
> > > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > >
> > > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1). If the person should be joined as a "necessary" party under Rule 19(a)(1), "***but cannot be*** (because, for example, joinder would divest the court of jurisdiction)," *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279 (11th Cir. 2003) (emphasis added), the court "must then ascertain, applying the factors in Rule 19(b), whether the party is indispensable or if the litigation may continue in that party's absence." *Developers Sur. & Indem. Co. v. Harding Village, Ltd.*, No. 06-21267-CIV, 2007 WL 465519, at *3 (S.D. Fla. Feb. 9, 2007) (citing *Focus on the Family*, 344 F.3d at 1280). "The movant bears the burden of establishing that a party is necessary or indispensable under Rule 19." *Hardy v. IGT, Inc.*, No. 2:10-CV-901-WKW, 2011 WL 3583745, at *2 (M.D. Ala.

Aug. 15, 2011) (citing *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1347 (11th Cir. 2011)).

Defendant has not met its threshold burden of demonstrating that Wells Estate is a "necessary" party who should be, but cannot be, joined under Rule 19(a). Defendant makes no showing that complete relief is impossible absent the joinder of Wells Estate. Nor has defendant sufficiently demonstrated that the Wells Estate has any interest in this litigation or that the continuation of this case to judgment would expose defendant to a risk of incurring double or inconsistent obligations. As plaintiffs correctly point out, defendant is welcome to move for leave to file a third-party complaint against the Wells Estate if defendant believes it has a meritorious claim the Estate.

Moreover, even assuming defendant could establish that the Wells Estate is a necessary party, defendant cannot demonstrate that the Estate cannot be joined to this action. To the contrary, Wells was a resident of Florida at the time of his death, and presumably, his estate is also located in Florida. Therefore, the joinder of the Estate would not divest the court of diversity jurisdiction. Accordingly, defendant's Amended Motion to Dismiss for failure to join an indispensable party is due to be denied.[3]

---

[3] Defendant also makes no effort to show that the Estate is an indispensable party under Rule 19(b).

## CONCLUSION

For the foregoing reasons, the court is of the opinion that defendant's Amended Motion to Dismiss, (doc. 6), is due to be denied and plaintiffs' Motion to Strike, (doc. 13), is rendered moot. An Order denying defendant's Amended Motion to Dismiss will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 12th day of September, 2012.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE